UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE HUNT,

      Plaintiff,

vs.                                                    Case No.

HARTFORD LIFE AND ACCIDENT            HON.
INSURANCE COMPANY

      Defendant.

---

Troy W. Haney (P48614)
Haney Law Office, P.C.
Attorney for Plaintiff
330 East Fulton Street
Grand Rapids, MI 49503
Telephone:    616-235-2300
Facsimile:     616-459-0137
Email:         thaney@troyhaneylaw.com

---

## COMPLAINT

Plaintiff, Michelle Hunt, by her attorney, Troy W. Haney of Haney Law Office, P.C., and for her complaint against Defendant, Hartford Life and Accident Insurance Company, states as follows:

### Nature of Action and Jurisdiction

1. This is a civil complaint brought by Plaintiff, Michelle Hunt ("Plaintiff"), under the Employee Retirement Income Security Act ("ERISA"), §502, 29 U.S.C. 1132, regarding breach of the terms of an employee benefit plan and breach of fiduciary duties, for the purpose of compelling Defendant, Hartford Life and Accident Insurance Company ("Hartford") to provide certain disability insurance benefits in the amounts and at the

coverage levels promised and for an accounting, recovery of damages, costs, and attorney fees incurred as a consequence of Defendant's breaches of its obligations and duties under ERISA as detailed herein.

2. This Court has subject jurisdiction over Plaintiff's claims pursuant to ERISA §502(e) and (f), 29 U.S.C. 1132(e) and (f) and 28 U.S.C. 1331.

3. Venue properly lies in this District pursuant to ERISA §502(e)(2), 29 U.S.C. 1132(e)(2).

## Parties and General Allegations

4. At all relevant times, Plaintiff was a participant, as defined by ERISA §3(7), 29 U.S.C. 1002(7), in the "Trinity Health Welfare Benefit Plan Effective 01/01/2010, Participating Member in the Trustees of the Healthcare Benefits Alliance Trust" ("the Plan") provided by Trinity Health to its eligible employees, including Plaintiff, administered and funded by an insurance policy issued by Defendant, Hartford, for group disability benefits as group policy no. GLT-696981.

5. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA §3(1), 29 U.S.C. 1002(1), sponsored by "Trinity Health Welfare Benefit Plane Effective 01/01/2010, Participating Member in the Trustees of the Healthcare Benefits Alliance Trust" and funded by the above-referenced insurance policy issued by Hartford. As such, Hartford is the proper party to defend this matter and the sole entity responsible for the payment of claimed benefits set forth below.

6. At all relevant times, Defendant was the fiduciary of the Plan within the meaning of ERISA §3(21), 29 U.S.C. 1002(21), in that Defendant acted as a claims administrator and as a fiduciary for the Plan and exercised authority and control over the payment of long term

disability "LTD" benefits, which are assets of the Plan. Pursuant to 29 C.F.R. §2560.503-1(h)(1), Defendant therefore functioned as an administrator for claims procedure purposes.

## Facts

7. On all relevant dates, Plaintiff, Michelle Hunt, was a Licensed Practical Nurse who became employed full-time by Trinity Health on July 21, 2013.

8. The Plaintiff's last day of work was on September 3, 2015, due to the following diagnosed medical conditions:

    - Bilateral Sacroiliitis
    - Central Disc Bulge, at L5-S1 with Annular Tear
    - Cervical Radiculopathy
    - Cervical Spondylosis
    - Chronic Lumbar Radiculopathy
    - Chronic Fatigue
    - Chronic Pain
    - Fibromyalgia
    - Foraminal Stenosis, L5-S1
    - Lumbar Spinal Stenosis, moderate in severity, L2-L3, L3-4
    - Lumbar Spondylosis
    - Multilevel Foraminal Stenosis.

9. As a result of these conditions and the overflow of symptomatology, the Plaintiff has undergone two back surgeries: a laminectomy and a fusion at L4-L5. The Plaintiff is also prescribed narcotic pain medications and has received bilateral transforaminal epidural steroid injections, all to no avail.

10. As a result of the Plaintiff's various medical conditions, she also experiences severe and constant pain with prolonged sitting, standing, and/or walking.

11. The Plaintiff also experiences depression and anxiety, which these conditions have been exacerbated by the Plaintiff's reduced quality of life as a result of the above-described physical medical conditions.

12. In accordance with her employment contract, the Plaintiff applied for long term disability benefits through her employment. The Defendant initially approved the Plaintiff's LTD benefit claim and began payment of LTD benefits starting on March 4, 2016.

13. On December 20, 2016, Dr. Mark Juska completed an Attending Physician Statement, which included restrictions on the Plaintiff, limiting the Plaintiff to sitting, standing, or walking for only up to 3 hours out of an 8-hour day.

14. On June 27, 2017, an erroneous Attending Physician Statement was completed by Dr. Juska, which revised the Plaintiff's restrictions, and incorrectly stated that the Plaintiff could now sit for 6 hours, stand for 4 hours, or walk for 4 hours out of an 8-hour day. Dr. Juska would later attempt to correct his mistake, but not before the errors would negatively effect the Plaintiff's LTD claim.

15. In response to these apparent changes in restrictions, it is stated multiple times within the Defendant's Claim File that the Defendant now understood the Plaintiff to have the capability to work full-time. For example, in the notes provided for September 18, 2017, it was stated, "*...the [Attending Physician Statement] has given full time physical function that [Medical Case Manager] feels is appropriate at this time.*"

16. On October 4, 2017, the Defendant referred the Plaintiff's file for an Employability Analysis Report, which was completed by Lisa Screen Housley, MS, CRC, and which was based in part on the incorrect functional restrictions provided by the incorrect June 27, 2017 Attending Physician Statement. The Employability Analysis Report stated in part,

> -. This analysis was based upon her functional capabilities, education, training and work history. * * *
>
> **Functional Capabilities:**
> The functional capabilities used in this analysis are based on Attending Physician Statement completed on 6/27/2017 by Dr. Joska, Pain Management. Dr. Joska provided the following limitations: Claimant can sit 1 hour at a time, 6 hours/day stand and walk 1 hour at a time for 4 hours/day; * * *

The Employability Analysis Report also provided a list of potential sedentary occupations that were determined to fall within the Plaintiff's education, training, and work history, but also based upon the incorrect functional restrictions.

17. On October 17, 2017, based on the Employability Analysis Report, the decision was made for an early denial of the Plaintiff's LTD benefits. The Defendant's Claim File notes state in part,

> **Defendant's Claim File - October 17, 2017 – 4:03 p.m.**
> File was [referred] for [Employability Analysis Report] with physical [restrictions and limitations] and occupations were identified which [Eligible Employee] could perform on a consistent and reliable basis. **AA recommends early denial of claim beyond TC 3/4/18.** (Emphasis added).

18. On October 25, 2017, the Defendant issued a letter to the Plaintiff to inform her that effective March 4, 2018, the Plaintiff would no longer qualify for LTD benefits. The letter stated in part,

> We have completed our review of our claim for benefits and have determined that you do not meet the Policy definition of Disability on and beyond March 4, 2018. * * *
>
> We based our decision to terminate your claim on Policy language. All the papers contained in your file were viewed as a whole. This included:
>
> * * *
> 2. Attending Physician's Statement – Progress Report signed by Dr. Joska, pain management, dated June 27, 2017;
> * * *
> 10. Employability Analysis Report completed by The Hartford's Rehabilitation Clinical Case Manager on October 4, 2017.
>
> -. You were Disabled from Your Occupation on September 4, 2015 and became entitled to LTD benefit payments on March 4, 2016. Accordingly, pursuant to the Policy's definition of Disability, you are entitled to LTD benefits during the first 24 months if your condition prevents you from performing the Essential Duties of Your Occupation. As of March 4, 2018, you have received 24 months of LTD disability

5

>benefits. To remain eligible beyond March 4, 2018, you need to be prevented by Disability from performing Any Occupation for which you are qualified by education, training, or experience. * * *
>
>The Attending Physician's Statement signed by Dr. Joska dated June 27, 2017 noted your primary diagnoses as low back pain due to sacrolitis with a secondary diagnosis of lumbar disc herniation. The subjective symptoms include aching, throbbing and sharp pains across back and down left leg and the physical exam findings noted tenderness upon exam. The restrictions and limitations provided include sitting for 1 hour at one time for 6 hours total per day, standing for 2 hours at one time for 4 hours total per day, and walking for 1 hour at one time for 4 hours total per day. Dr. Joska further noted that you can occasionally lift up from 10-15 lbs. and frequently reach and finger/handle. Dr. Joska advised that you need to be able to change positions and sit when needed. * * *
>
>Using this information, a Vocational Rehabilitation Clinical Case Manager performed an employability analysis which showed that there are a number of occupations for which you are qualified that are within your physical capabilities. * * *
>
>Based on this information, we have concluded that you are not prevented from performing the Essential Duties of Any Occupation. Because of this, you do not meet the Policy definition of Disability as of March 4, 2018 and no further LTD benefits are payable beyond March 3, 2018. * * *

19. On December 20, 2017, the Plaintiff appealed the Defendant's decision to terminate her LTD benefits after March 4, 2018. The Plaintiff's appeal was based on the errors included on the June 27, 2017 Attending Physician Statement, and the appeal stated in part,

>I am writing to appeal the decision to terminate my long term disability benefits effective March 4, 2018. * * *
>
>The physician's statement dated 6/27/17 says that I have limitations of sitting 1 hour at a time up to 6 hours when the actual limitation is much less per my tested functional capacity. The physicians statement for standing said 2 hours up to 4 hours when the actual limitation is much less per my tested functional capacity. This was clearly just an oversight when the form was completed. Please see letter from my physician which states the maximum work day for sitting is 1/3 or 2.6 hours per 8 hour day. My restrictions for standing and walking are even less. * * *
>
>The other argument I have is that if you review my MRI reports you can see that my condition is not improving. The adjacent segments of the spinal fusion is getting worse over time. I am simply trying to avoid any more surgeries. The positions you listed would require prolonged sitting and standing which would only aggravate and worsen my conditions which is what I am trying to avoid. * * *

20. The Plaintiff's appeal also included a "To Whom It May Concern" letter from Dr. Juska, dated December 21, 2017, which stated,

6

> The functional capacity exam states that patient is able to static stand 10-15 minutes at a time, dynamic stand 15-30 minutes at a time, walk 30 minutes at a time, and sit 30-60 minutes at a time. Physical abilities match her job description for walking and sitting 1/3 of the day, but does not match static or dynamic standing for a 1/3 of the day.

These functional capacity restrictions not only prevent the Plaintiff from performing the duties of her own occupation, but would also prevent the Plaintiff from performing full time in any light or sedentary duty positions.

21. According to the Defendant's Claim File notes, the Defendant became well-aware of the fact that its decision to terminate benefits was based on a faulty Attending Physician Statement, as is demonstrated from the notes below,

> **Defendant's Claim File - January 3, 2018 – 9:50 a.m.**
> A/P: Letter from Dr. Joska states that the physical abilities in [Functional Capacity Evaluation] match [Job Description] for walking and sitting but does not match static or dynamic standing on [Job Description]… File was terminated for TC, [Eligible Employee] remains [disabled] from own [occupation].
>
> **Defendant's Claim File - January 11, 2018 – 10:39 a.m.**
> RTWCM received hotline call regarding new information potentially changing outcome of previous [Employability Analysis Report].
>
> [Eligible Employee's] function has been amended to part-time work and this may affect the hourly earnings potential, which could also affect the occupations identified as possible matches. The function for sit/stand/walk will also need to be taken into account when re-evaluating occupations previously identified. * * *
>
> **Defendant's Claim File - January 11, 2018 – 10:44 a.m.**
> O: [received] letter from [Attending Physician] dated 12/21/17 indicating that the physical abilities in the [Functional Capacity Evaluation] match [Job Description] for walking and sitting but does not match static or dynamic standing on [Job Description]
>
> A: TC previously denied based on [information received] from [Attending Physician] and co-morbid clinical review.
>
> Appeal letter from [Eligible Employee] also [received] with copy of 6/27/17 stating information provided on form was an error. As claim is open and TC is not until 3/4/18, AA will review.
>
> [Attending Physician Statement] completed 6/27/17 by Dr. Joska states that EE can sit, stand and walk 1 hr. at a time and sit 6 hours/day, stand/walk 4 hours/day. [Eligible Employee] notes that this is incorrect and letter from [Attending Physician] refers back to [Functional Capacity Evaluation] that was completed 10/17/17 noting that [Eligible Employee] can static stand 10-15 minutes at a time, dynamic stand 10-15 minutes at a time, walk 30 minutes at a time and sit 30-60 minutes at a time.

7

> AA confirmed with RCM that this could potentially change outcome of [Employability Analysis Report]. * * *

22. On January 16, 2018, the Defendant sent a letter to Dr. Juska to request clarification regarding the Plaintiff's functional capacity. However, the Defendant provided a double-sided question, and unfortunately, Dr. Juska only provided a single word answer, leaving the true meaning of his response as quite unclear. The question and response are provided below:

> You provided an [Attending Physician Statement] on 06/2017 thereafter illustrating the [Functional Capacity Evaluation] results which gave her Sedentary Work Capacity.
>
> On 12/21/2017 you provided a letter that explained her sit, stand and walk tolerance: yet it is somewhat unclear and inconsistent than what you had previous indicated on the [Attending Physician Statement].
>
> 1. Therefore do you agree with the [Functional Capacity Evaluation] results and/or Ms. Hunt having the ability to perform full time Sedentary Work Capacity with positional changes and walking on her own pace?
>
> Yes __X__ No _____

Unfortunately, this only provides more confusion, as the premise to the question is poorly drafted, and Dr. Juska does not specify which part of the question he is confirming. Also, both sides of the question cannot simultaneously be true, as they are in direct conflict with each other.

23. On February 26, 2018, the Defendant advised that they were maintaining the decision to terminate LTD benefits. The Defendant's decision was largely due to the Defendant choosing to interpret Dr. Juska's response to the January 16, 2018 letter in the manner most-favorable to the Defendant's prior decision. The February 16, 2018 letter stated in part as follows:

> On January 3, 2018, we received a letter from Dr. Joska indicating that your physical abilities completed in the 2016 Functional Capacities Evaluation would match your job description for walking and sitting but not for static of dynamic standing.

> Your file was referred to one of the Hartford's Medical Clinical Case Managers (MCCM) who wrote Dr. Joska to confirm your ongoing restrictions and limitations. On January 30, 2018, Dr. Joska responded to the MCCM and confirmed that you are able to perform full time sedentary work with positional changes and walking at your own pace.
>
> Based on the updated information from Dr. Joska, we confirmed with the Vocational Rehabilitation Case Manager that previously identified occupations would still fall within the restrictions noted above.
>
> Base on this information, our prior decision that was communicated in the October 25, 2017 letter remains valid and you do not meet the Policy definition of Disability on and beyond March 4, 2018 based on your physical impairments.

24. On May 19, 2018, a Vocational Rehabilitation Analysis was prepared by James Fuller, MA, CRC, and which stated in part,

> Objective findings are that Ms. Hunt's condition is "worsening (spinal canal stenosis at L3-4)", she is found to have "moderate sized right paracentral disc protrusion extending into the right C7 neuroforamina," and she is diagnosed with Major Depression with "increased symptoms of anxiety and depressed exacerbated by chronic pain." As a result of all the barriers presented, Ms. Hunt is obviously unemployable with no vocational options and no wage earning capacity.
>
> -. She is certainly unable to perform any of her former jobs, but is also found incapable of any work, even unskilled, sedentary, physical demand jobs. Based upon my review of medical, my discussion with Ms. Hunt in a meeting held with her on 5/18/18, and based on my experience including 39 years as a Vocational Rehabilitation Counselor, as well as a history including work as Director of Work Capacity Services for Rehabilitation Institute of Michigan, Ms. Hunt is found to be unemployable with no vocational options.

25. On August 16, 2018, the undersigned submitted an appeal of the Defendant's decision to uphold the termination of the Plaintiff's LTD benefits, providing additional medical records, as well as a Vocational Rehabilitation Evaluation prepared by Dr. Robert Ancell, dated August 8, 2018. Dr. Ancell's report stated in part,

> Her limitations include inability to work, cook, clean, do laundry or go on the boat. Her ability to socialize with her friends is also limited. Her condition is worsening over time… She indicates that her doctors, both the physical and psychiatric doctors, have not released her to work. She indicates that when she was working, she was using accommodations, which included a back brace, a [Transcutaneous Electrical Nerve Stimulation] unit, an ergonomically designed chair and they were in the process of considering ordering a Vera flex desk. As verified in the medical, she had surgery done in March 2014. She returned to work after six months. Any job consideration would have to consider the fact that she lays down two hours during the day, that based on the exacerbation of her symptoms and pain, she would miss anywhere from three to four days per month and that there are days that she cannot get out of bed. In addition, she continues to experience anxiety,

depression and is still seen by a psychiatrist on an every two month basis and a social worker on an every two week basis. She has also been diagnosed with fibromyalgia. * * *

On November 29, 2017, Dr. Agarwal saw her and diagnosed her with severe chronic back pain. She had been on long term disability since September 2015. She had an FCE, which noted that her standing and sitting was limited to one hour in an 8-hour day. * * *

On January 16, 2018, Dr. Juska, the pain specialist, was sent a letter from Hartford. It noted that two years prior, in 2016, an FCE said she was unable to return to work in her capacity as a nurse full time; this was primarily due to an inability to lift more than 10 to 15 pounds. They noted that regarding her handling skills in coordination, she could perform in a sedentary or light capacity. They felt that her managed bed task that required sedentary to light material handling in dynamic sitting and standing with the possibility of changing positions as needed and the tolerance for dynamic sitting is 30 to 60 minutes, sitting with the ability to change positions as needed and walking at her own pace. They asked him whether he agreed with those FCE results and he said yes. Dr. Juska further indicated that she required medication management for chronic pain and was participating in pool therapies. This was signed by Dr. Juska on January 30, 2018. * * *

On April 16, 2018, Ms. Hunt was seen by the surgeon, he diagnosed her with spondylitis with radiculopathy, lumbar region, spinal stenosis lumbar region, sacroiliitis. He wanted to try bilateral L5 nerve root injections. Valium was prescribed. * * *

From a vocational rehabilitation standpoint, Ms. Hunt has sustained significant vocationally limiting problems. She is currently on significant narcotic medication for pain. In spite of the medication, she continues to have moderately severe pain. She has not worked for three years. It should be noted that the job that she last had was a job that is best considered a sedentary position. Her restrictions precluded her from being able to do CPR or lift 50 pounds. The fact that she last worked in a sedentary position and could no longer continue because of the nature and extent of her ongoing difficulties, is consistent with a decision that there are no sedentary positions that she can perform given her age, education and her previous experience. It should also be noted that the jobs that are suggested put a significant premium on the use of both upper extremities. The test results on the Minnesota Dexterity Test were at the 1st percentile.

The same was true for the Purdue Pegboard Test. Her poor performance on the Functional Capacity Test were related to her intolerance to sitting. Therefore, it is my professional opinion based on the totality of all of the medical records, the results of the Functional Capacity Evaluations and her failure to be able to perform even sedentary work in her former employment and in the Functional Capacity Evaluation, that there are no jobs that exist that Ms. Hunt can perform. –.

26. The August 16, 2018 appeal also included a "To Whom It May Concern" letter, prepared by Vickie Hinshaw, LMSW and Manav Khullar, M.D. of Pine Rest Christian Mental Health Services, dated August 8, 2018, and which documented that the Plaintiff's chronic

10

pain has exacerbated her additional medical conditions of major depressive disorder, anxiety, and PTSD. The letter stated as follows,

> Michelle has received treatment through Pine Rest Christian Mental Health Services since 1-3-16 due to depression and anxiety which may cause racing thoughts, panic attacks, insomnia and the inability to concentrate. Her symptoms are frequently exacerbated by stressful situations and/or chronic pain which limit her daily functioning. Michelle has been compliant with treatment and has reported using medication as prescribed and coping strategies to help manage her symptoms. She also reported supplementing her treatment with reading and applying concepts from self-help books. Michelle has reported short periods of emotional stability, but her distress tolerance is impaired which may result in spontaneous emotional dysregulation. Due to the combination of Michelle's mental health and her chronic pain Michelle hasn't been able to maintain employment.
>
> Michelle's primary diagnoses are Major Depressive Disorder, recurrent, Generalized Anxiety Disorder with panic attacks, and Post Traumatic Stress Disorder.

27. On December 11, 2018, the Defendant advised that it was maintaining its decision to terminate benefits as of March 4, 2018. The Defendant's final decision was based in part on a medical file review by a Dr. Christopher Rodriguez, who did not perform a physical examination of the Plaintiff, and a psychiatric file review by Dr. David Schaefer, who did not speak or meet with the Plaintiff. At no time did the Defendant request an independent physical or mental examination of the Plaintiff. The decision letter stated in part as follows:

> Clarification of the medical file by a consulting Occupational Medicine physician assessed the ability for full time function with restrictions from a physical standpoint. These restrictions were largely consistent with function previously documented by Dr. Juska, with the medical consultant noting that some modifications were made to Dr. Juska's recommendations in order to account for your client's consistent and observed symptoms of being unable to sit, stand or walk for long periods.
>
> Clarification was also requested of the medical file in regards to your client's mental health condition due to the conflicting opinions of function… The consulting Psychiatrist identified no support for psychiatric restrictions or limitations in the medical file based on your client's mental status examination findings and documented activities. * * *
>
> Our appeal review has concluded that your client is not prevented from performing Any Occupation as of March 4, 2018. As such, the termination of your client's claim for benefits was appropriate and the claim remains closed.

11

28. As stated above, the Defendant considered and relied upon the medical file review completed by Dr. Christopher Rodriguez, and the psychiatric medical file review completed by Dr. David Shaeffer in making its final determination to uphold the decision to terminate benefits. However, neither Dr. Rodriguez's report nor Dr. Shaeffer's report was provided to the Plaintiff, nor to her treating physicians, for an opportunity to review or respond to the report, as is required by 29 C.F.R. § 2560.503-1(h)(4)(i)-(ii).

29. In the December 11, 2018 letter, the Defendant also advised that "*our claim decision is now final as administrative remedies available under the Policy have been exhausted*" and that the Plaintiff has "*the right under Section 502(a) of ERISA to bring a civil action disputing this adverse benefit decision*".

30. As a result of her inability to return to work — in any capacity — the Plaintiff also applied for Social Security Disability ("SSD") benefits, which have been awarded.

31. As a result of the aforementioned wrongful action, Plaintiff's group waiver of life premium may have also been wrongfully denied by operation of the decision to terminate disability benefits.

## COUNT I
### Claim for Benefits Pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) against Defendant

32. Plaintiff incorporates paragraphs 1 through 31 above as if fully restated herein.

33. ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan and/or to clarify her rights to future benefits under the terms of a plan.

34. The failure to pay full disability benefits as described above are in direct violation of the terms of the Plan.

35. The Plan has failed to pay disability benefits to Plaintiff despite the recommendations of her physicians and disabling medical conditions.

36. The failure and refusal of the Plan to pay the benefits owed Plaintiff under the Plan is a breach of the terms and provisions of the Plan.

37. In addition, the Plan has failed to properly and thoroughly investigate Plaintiff's claim in the manner required by ERISA's fiduciary and claims procedure requirements.

38. The actions of the Plan have caused damage to Plaintiff in the form of the denial of long term disability benefits.

39. In addition, because the Plan denied the payment of Plaintiff's long term disability benefits, Plaintiff became ineligible for other benefits provided through her employment such as pension, medical benefits, and the waiver of group life insurance premiums.

## PRAYER FOR RELIEF

Plaintiff requests that this Honorable Court grant the following relief:

A. A declaratory judgment pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132 (a)(1)(B) and 28 U.S.C. 2201, declaring that Plaintiff is entitled to the group employee benefits in the proper amounts as set forth in the Plan in effect at the time benefits became payable and that Defendant has violated the Plan and its fiduciary duties by failing to pay these benefits and honor the group waiver of life premium.

B. A full and accurate accounting by Defendant of all computations for Plaintiff's employee benefits, in sufficient detail so that Plaintiff may ascertain that her benefits are being paid in the proper amount.

C. An Order compelling Defendant to pay Plaintiff forthwith the full amount of employee benefits due her and to continue such payments for the period set forth in the Plan, including interest on all unpaid benefits.

D. An Order awarding reasonable attorney fees and costs pursuant to ERISA §502(g)(1), 29 U.S.C. 1132 (g)(1).

E. Such other relief as may be just and appropriate.

Dated:  July 22, 2019                                   */s/ Troy W. Haney*
                                                        Troy W. Haney (P48614)
                                                        Haney Law Office, P.C.
                                                        Attorney for Plaintiff
                                                        330 East Fulton Street
                                                        Grand Rapids, MI 49503